## Finch v. United States.

While the act of July 28, 1868 (15 Stat. 125), was in force, A., the owner of two distilleries, applied to the Commissioner of Internal Revenue for Tice meters for them, and deposited the price with the collector of the proper district to be paid to the manufacturer. The latter delivered them and received the money. In one distillery the meters were not used, and in the other they never worked properly. A. sued the United States for the money so paid. *Held,* that he was not entitled to recover.

Appeal from the Court of Claims.

The facts are stated in the opinion of the court.

*Mr. Nathaniel Wilson* and *Mr. Lewis Abraham* for the appellants.

*The Solicitor-General* for the United States.

Mr. Justice Swayne delivered the opinion of the court.

This is an appeal from the Court of Claims. The case is spread over a large surface in the record, but a very condensed statement of the facts will be sufficient for the purposes of this opinion.

In the years 1868 and 1869 the appellants were distillers, and had two distilleries in Pittsburgh, Pa. The distilleries were designated as 1 and 4. In October, 1868, the appellants made application, in due form, to the Commissioner of Internal Revenue for Tice meters for distillery No. 1, and at the same time deposited with the collector of the district in which the distilleries were situated the sum of $2,050, the price of the meters, to be paid over to the manufacturer when the meters were delivered to them. The meters were delivered, and the money was paid accordingly.

These meters were never used, the distillery having ceased to run long before any one went to make the attachment necessary to utilize them.

In March, 1869, the appellants made a like application for such meters for distillery No. 4, and deposited with the collector $2,100 to pay for them. They were delivered to the distillers in July, 1869, and the $2,100 was thereupon paid to the manufacturer. These meters never worked properly.

There is no proof that they were tested before they were shipped from the manufactory,. nor that any officer of the Internal Revenue Bureau was detailed to attach them, or to test them after their attachment, or that their indications were ever in any wise regarded by the storekeeper in making his daily reports, or by the assessor in making his monthly computation of the products of the distilleries.

By the act of July 20, 1868, c. 186 (15 Stat. 125), the commissioner, for the prevention and detection of fraud by distillers of spirits, was "authorized to adopt and prescribe for use such hydrometers, saccharometers, weighing and gauging instruments, or other means for ascertaining the quantity, gravity, and producing capacity of any mash, wort, or beer used, or to be used, in the production of spirits, and the strength and quantity of spirits subject to tax," as he might deem proper.

Under these provisions, orders, regulations, and instructions, covering the subject of the meters in every aspect, were issued by the commissioner. They compelled the distillers to buy and pay for Tice meters, as was done in the case in hand, and left them no choice to do otherwise. One of those regulations was as follows: "Under the provisions of the law the distiller is requi. d to furnish and attach meters at his own expense, and also to furnish all pipes, materials, labor, and facilities necessary to complete such attachment. The first duty of a distiller is, of course, to procure a meter. The manufacturer is not required to furnish the meters on credit, and ought not to be expected to do so. When he ships a meter to a distiller in accordance with the application, the manufacturer is entitled to the pay for it. The law does not require the manufacturer to attach it, but, on the contrary, requires the distiller to attach at his own expense."

Another specified that "the expenses and transportation and attachment of meters, and of changes required to be made in the distillery, are to be paid by the distiller," and "distillers must furnish all lumber and other materials necessary for the attachment of the meter, and such workmen and assistants as may be required." By a circular of June 8, 1871, the commissioner announced substantially that the meters were a failure, and from that time they ceased to be used.

By the act of June 6, 1872, sect. 12, c. 315 (17 Stat. 239), all the provisions of the act of 1868 touching meters were repealed, and the use of meters was thereupon abandoned by law. Upon the passage of this act the commissioner issued a circular advising distillers that "all meters attached to distilleries may be detached," and "that the meters being the property of the distillers, they will be permitted to dispose of them as they may desire."

By this suit the appellants seek to recover from the United States the aggregate of the $2,050 and $2,100 paid by them for the Tice meters as before mentioned.

The appellants insist that there was an implied warranty by the United States that the meters they thus bought would be effectual for the purposes they were designed to accomplish, and that there being a clear breach of this warranty, the United States are liable accordingly.

To this there are two answers : —

1. The meters were solely for the benefit of the United States. The appellants had no interest in their working well. If they had any interest in the result, it was in the other direction.

The sole object of the meters was to prevent or expose frauds by the distillers. If the meters were effectual for these purposes, so much the better for the government. If they were a failure, so much the worse. If the distillers were honest, the success of the meters was to them wholly immaterial. If dishonest, the failure would have helped to make their frauds lucrative, while efficiency might have cut off their fraudulent profits and subjected them to exposure and punishment. The distillers did not pay out a dollar more because the meters were a failure, nor would they have paid a dollar less if the tests thus provided had fully answered the expectations of the government.

In either event the pecuniary result to the distillers, if honest in their business, must have been exactly the same.

The essence of their complaint is that the government found the means lawfully provided to detect their frauds, if they committed any, unavailing, and therefore used none. Their argument implies that, if those means had been effectual and

had been used, they would have been satisfied, and their claim could not have arisen.

Both the proposition and the argument seem to us to involve a palpable solecism. There is nothing in the facts of which any contract relation, express or implied, between them and the government, can be predicated.

2. Regulations established pursuant to law made it obligatory upon the distillers to procure the meters, if they continued to carry on the business. They were required to buy and pay, and did so. The government neither paid nor agreed to pay anything. The purchase of the meters was an incident and burden of the business. The right to engage in the business was not unqualified. It could only be done when authorized by the government, in the mode prescribed. No one was compelled to procure that authorization, but whoever elected to do so took it necessarily *cum onere*, and hence has no right to complain of any condition imposed and assented to, or of anything resulting from it. Certainly no consequence such as that here in question can constitute a cause of action against the United States, any more than would any other expenditure or any other loss arising from the business.

Nor can there be any valid demand against the United States upon the ground of money paid and expended for their benefit. The meters were bought and paid for by the appellants. They chose to give the order and pay the money rather than give up the business. The meters were delivered to them by the manufacturer. They owned them, and still own them. The United States never asserted any claim to them. After their use was finally dispensed with by the government, the distillers had the right, as they still have, to dispose of them according to their discretion. Upon the passage of the act of 1872 a circular from the commissioner notified them accordingly.

Nor is there any foundation for a claim against the United States for money had and received. It is true, their officer received the price of the meters from the appellants; but it was for the manufacturer, and not for the government, and it was paid over, accordingly, upon the delivery of the meters. The officer was a mere conduit for passing the money from one

party to the other.   The, regulation which prescribed the ar-rangement was intended to secure certainty and promptitude of payment to the manufacturer, and corresponding prompti-tude on his part in the delivery of the meters when ordered.

Not a dollar of the funds .in question is, or ever was, in the national treasury.

We concur in the views expressed by the Court of Claims.

*Judgment affirmed.*